IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

STEVE BESWICK                                                                               PETITIONER

VERSUS                                                     CIVIL ACTION NO. 5:20-cv-98-DCB-MTP

WILLIAM BARR, *et al*.                                                                    RESPONDENTS

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Steve Beswick's Petition for Writ of Habeas Corpus [1] and Application for Preliminary Injunction and Temporary Restraining Order [14]. Having carefully considered the record, the parties' submissions, and the applicable law, the undersigned recommends that the Petition [1] be dismissed and all other requested relief be denied.

## BACKGROUND

Petitioner, a citizen of Jamaica, is currently held in Immigration & Customs Enforcement ("ICE") custody at the Adams County Detention Center ("ACDC"). He filed the instant Petition [1] and request for preliminary injunction ("PI") and/or temporary restraining order ("TRO") challenging his continued detention at ACDC in light of the COVID-19 pandemic.

This Petition was originally filed in the Southern District of New York and included three other petitioners. On April 6, 2020, the United States District Court for the Southern District of New York severed the Petition. Steve Beswick's case was transferred to this Court because he is held in civil detention in Natchez, Mississippi, and the proper respondent in this matter is the individual who has custody over him, Shawn Gillis, the Warden of ACDC. Order [15].

On April 22, 2020, Shawn Gillis filed his Response [20] to the Petition [1] and his Response [21] to Petitioner's Application for Preliminary Injunction and Temporary Restraining

1

Order [14]. The Court directed Petitioner to file his reply on or before April 29, 2020. Order [17]. On May 5, 2020, the Court granted Petitioner an extension to May 12, 2020 to file his reply. Order [26]. Petitioner did not file a reply and the time for doing so has now expired.

Petitioner seeks to be released from custody due to the health concerns caused by the COVID-19 pandemic and what he believes is a heightened probability of being exposed to the virus. Petitioner, however, does not suffer from any serious underlying health issues that would place him at greater risk of death if he contracted the virus. Petitioner mentions that he has headaches and has a metal rod in his foot from a previous accident. Pet. [1] at 6. He also states that he is a smoker. *Id*.

Respondent Gillis attached to his Response a declaration from the Acting Assistant Field Director for Enforcement and Removal Operations, Robert Hagan. The declaration explains what efforts ACDC has made to handle the current health crisis. *See* Resp. [20], Ex. B.

As of 9:00 a.m. on April 20, 2020, there were nine confirmed cases of COVID-19 among the detainees at ACDC. *Id*. at 2. One detainee had been transferred to a hospital and the eight other detainees remained at ACDC for treatment. *Id*. These eight detainees were receiving care from medical personnel and were being housed in separate, contained units or negative pressure rooms. *Id*. There were also three detainees suspected of having COVID-19, and they were housed in isolation and on medical observation. *Id*.

If a detainee has had known exposure to another individual with COVID-19, ACDC places them in a "cohort" with other exposed individuals for fourteen days and monitors them for fever and respiratory issues. *Id*. Detainees also have access to daily sick calls in a clinical setting, and ACDC can facilitate specialty services or hospital care for detainees. *Id*.

ACDC is not overcrowded. *Id*. at 3. The facility has the capacity to hold 2,300 detainees, but currently houses 844. *Id*. When a new detainee is brought to ACDC, they are screened for health issues and questioned about any close contact with infected individuals. *Id*. at 2.

ACDC has also increased sanitation efforts to reduce the spread of the virus. Frequently-touched surfaces and equipment shared by staff members are disinfected several times a day. *Id*. at 3. Hand sanitizer, soap, masks, gowns, and eye protection are provided to staff. *Id*. Additional cleaning solution is provided to detainees. *Id*. ACDC has also imposed a "no-contact" requirement for essential professional visits at the facility and has suspended all in-person social visitation and tours of the facility. *Id*. Respondent maintains that ACDC has taken sufficient steps to combat the health crisis and Petitioner is not entitled to habeas relief on the grounds that his health may be at risk.

## ANALYSIS

*Petition for Habeas Corpus*

Petitioner brought this matter as a habeas corpus petition under 28 U.S.C. § 2241 challenging his continued civil detention. *See* Pet. [1]. An individual may seek habeas relief under 28 U.S.C. § 2241 if he is "in custody" under federal authority "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The "sole function" of a habeas petition is to "grant relief from unlawful imprisonment or custody" and "the court has no power to entertain an application for… injunctive relief." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). "If a favorable determination ... would not automatically entitle [the detainee] to accelerated release, ... the proper vehicle is a [civil rights] suit." *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (internal citations omitted).

In the Fifth Circuit, challenges to the *conditions* of confinement should be brought as civil rights actions and challenges to the *duration* of confinement should be brought as habeas petitions. *Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998).[1]  "Simply put, habeas claims involve someone's liberty, rather than mere civil liberty." *Id*.

The Petition [1] appears to blend these two types of actions.  He states that the conditions at ACDC are such that he is at a greater risk of exposure to COVID-19 and he is not provided with enough soap to practice proper hygiene, which suggests a challenge to the conditions of his civil detention.  Pet. [1] at 6.  But, his requested relief is to be immediately released from detention, which is a form of relief that sounds only in habeas in the Fifth Circuit. *Id*. at 45.  Respondent asserts that Petitioner cannot challenge the conditions of his confinement within his habeas corpus petition and argues that Petitioner has not met his burden to establish a constitutional violation.

If the Court granted Petitioner's requested relief, it would result in his immediate release.  The undersigned finds that the Petitioner has brought a habeas matter because the requested relief challenges the fact or duration of his confinement.  *Cook v. Texas Dept. of Criminal Justice*

---

[1] There is a disagreement among the circuit courts regarding the propriety of a conditions of confinement claim brought within a habeas petition.  Several circuits follow the same approach as the Fifth Circuit and only allow habeas petitions that relate to the legality of the imposition or duration of confinement. *See Nettles v. Grounds*, 830 F.3d 922, 933 (9th Cir. 2016); *Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014); *Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012); *McIntosh v. U.S. Parole Comm'r*, 115 F.3d 809, 811 (10th Cir. 1997); *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).  Other circuits have held that habeas corpus petitions may challenge the conditions by which a sentence is imposed. *See Aamer v. Obama*, 742 F.3d 1023, 1036 (D.C. Cir. 2014); *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *Miller v. United States*, 564 F.2d 103, 105 (1st Cir. 1977).
  The Supreme Court recently stated that it has "left open the question whether [prisoners] may be able to challenge their confinement conditions via a petition for writ of habeas corpus." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862-63 (2017).

4

*Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994) ("the writ of habeas corpus is the appropriate federal remedy for [detainees] challenging the fact of confinement"); *see also Barrera v. Wolf*, 2020 WL 1904497, at *4 (S.D. Tex. April 17, 2020) ("Because Plaintiff's are challenging the fact of their detention as unconstitutional and seek relief in the form of immediate release, their claims fall squarely in the realm of habeas corpus"). Moreover, the Petition is plainly captioned: "Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241."

Petitioner asserts that his risk of exposure to COVID-19 in ACDC renders his detention punitive and in violation of the Due Process Clause of the Fifth Amendment. Pet. [1] at 37. The argument, however, addresses the conditions of Petitioner's confinement and does not attack the legality of the imposition or duration of Petitioner's detention.

Petitioner's claims, like constitutional claims of overcrowding or denial of medical care, do not entitle him to habeas relief under section 2241. *Hernandez v. Garrison*, 916 F.2d 291, 293 (5th Cir. 1990) (injunctive relief relating to overcrowding and denial of medical care was not properly brought in a habeas action); *Rampersad v. Johnson*, 2017 WL 5181805, at *2 (W.D. La. Aug. 9, 2017) (holding that petitioner could not seek habeas relief relative to his denial of medical care claim); *Russell v. Epps*, 2012 WL 5930270, at *2 (S.D. Miss. Nov. 27, 2012) (petitioner cannot maintain habeas corpus relief on grounds that attack his conditions of confinement).[2] Therefore, Petitioner cannot obtain release from detention on the grounds that his conditions of confinement are unconstitutional.

---

[2] Several other district courts have held that COVID-19 is an extreme circumstance that allows for habeas relief. But even among those courts that have granted habeas relief, "there is no set formula for determining when habeas corpus relief is appropriate based on the risks from COVID-19." *Singh v. Hoover*, 2020 WL 1904470, at *3 (M.D. Penn. April 17, 2020).

Respondent also argues that Petitioner cannot bring a free-standing Due Process Claim under the Fifth Amendment. Resp. [15] at 15; *Hearth Inc., v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980) (direct causes of action arising from the Constitution are disfavored in the Fifth Circuit). The Court, however, need not reach this issue because such a claim would essentially challenge Petitioner's conditions of confinement, which would not entitle him to the relief requested in this habeas corpus matter. *United States v. Preston*, 2020 WL 1819889, at *3 (N.D. Tex. Apr. 11, 2020) ("A federal pretrial detainee's constitutional rights related to conditions of confinement [] flow from the Due Process Clause of the Fifth Amendment") (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Sacal-Micha v. Longoria*, 2020 WL 1815691, at *8 (S.D. Tex. Apr. 9, 2020) (discussing a direct Fifth Amendment claim in the context of an alien challenging his continued detention through a habeas petition).[3]

Finally, Petitioner urges that his continued detention violates international law.[4] He specifically cites to the International Covenant on Civil and Political Rights ("ICCPR") of which the United States is a party. Petitioner, however, cannot seek release under this international agreement. "[T]his Court cannot grant relief under the ICCPR because it is not a self-executing

---

[3] The Court in *Sacal-Micha* held that an alien detainee in poor health challenging his detention during the COVID-19 pandemic via a habeas petition failed to state a claim and was not entitled to release. The Court also held that the petitioner's free-standing Fifth Amendment claims could not proceed because he had failed to demonstrate the absence of an alternative remedy that would warrant recognizing a cause of action directly under the Fifth Amendment. 2020 WL 1815691, at *8.

[4] Petitioner briefly mentions the Convention Against Torture but did not brief the issue or provide any caselaw to demonstrate that it entitles him to relief. The Convention Against Torture was ratified by the Senate but was not self-executing and provisions that Congress intended to implement were codified in the Foreign Affairs Reform and Restructuring Act. *Auguste v. Ridge*, 395 F.3d 123, 132 (3d Cir. 2005). The Convention Against Torture does not create any rights enforceable in United States courts. *Omar v. McHugh*, 646 F.3d 13, 17 (D.C. Cir. 2011).

treaty." *Martinez-Lopez v. Gonzales*, 454 F.3d 500, 502 (5th Cir. 2006) (*citing Beazley v. Johnson*, 242 F.3d 248, 267 (5th Cir. 2001). "'Non-self-executing' means that absent any further actions by the Congress to incorporate them into domestic law, the courts may *not* enforce them." *Jama v. I.N.S.,* 22 F. Supp. 2d 353, 365 (D.N.J. 1998) (emphasis added). The ICCPR did not create individually enforceable rights. *United States v. Banaban*, 85 F. App'x 395, 396 (5th Cir. 2004). The ICCPR does not provide an avenue for Petitioner's release.

While the undersigned is sympathetic to the many challenges faced by individuals during this health crisis, it appears that ACDC has taken and is taking meaningful and reasonable steps to protect the detainees housed at that facility. He has not established a viable ground for relief under section 2241. He has only argued that his conditions of confinement are unconstitutional and that international law counsels against his further detention. Such claims, if cognizable, should be brought in a separate action, but his request for habeas relief cannot be based upon his complaints regarding his conditions of confinement. For these reasons, the undersigned recommends that the Petition [1] be dismissed.

*Temporary Restraining Order and Preliminary Injunction*

Petitioner has also moved for injunctive relief in the form of his immediate release from ACDC. *See* [14]. A party seeking a temporary restraining order or a preliminary injunction must establish the following elements: (1) there is a substantial likelihood of success on the merits; (2) a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the opposing party; and (4) the granting of the preliminary injunction will not disserve the public interest. *Mississippi Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618, 621 (5th Cir. 1985). The movant must carry the burden on all four elements before injunctive relief is granted. *Id*.

As discussed above, it is the opinion of the undersigned that Petitioner's concerns about COVID-19 do not entitle him to habeas relief under 28 U.S.C. § 2241. Petitioner, therefore, has not satisfied the first prong of the test for a temporary restraining order or a preliminary injunction and cannot establish a likelihood of success on the merits. The undersigned recommends that the request for injunctive relief also be denied.

*Attorneys' Fees*

Petitioner also requested costs and appropriate attorneys' fees under 28 U.S.C. § 2412. The statute allows a prevailing party in a civil action against the United States to collect costs and reasonable attorneys' fees. *See* 28 U.S.C. § 2412(a)-(b).

The undersigned first notes that Petitioner does not have counsel of record and previously asked the Court to appoint counsel for him. As there is no attorney involved, Petitioner is not entitled to any attorneys' fees. The undersigned has also recommended that the Petition [1] be dismissed and this matter resolved in favor of the Government. Therefore, Petitioner is not the prevailing party and is not entitled to any costs associated with pursing this matter.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that:

1. Petitioner's Application for Temporary Restraining Order and Preliminary Injunction [14] be DENIED.

2. Petitioner's request for attorneys' fees and costs be DENIED.

3. The Petition for Habeas Corpus [1] be DISMISSED with prejudice.

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the

recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 18th day of May, 2020.

s/ Michael T. Parker
United States Magistrate Judge
